# EXHIBIT I-COURT INSTRUCTIONS & INDICTMENT

18 U.S.C.A. § 2

UNITED STATES CODE ANNOTATED
TITLE 18. CRIMES AND CRIMINAL PROCEDURE
PART I--CRIMES
CHAPTER 1--GENERAL PROVISIONS

Current through Pub.L. 109-169, 109-173 approved February 15, 2006

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

CREDIT(S)

06 1635

FILED

SEP 21 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

COPY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2004 Grand Jury

| UNITED STATES OF AMERICA, | ) No. SA CR 03-25(B)-AHS |
|---|---|
| Plaintiff, | ) <u>T R I A L</u> |
| | ) <u>I N D I C T M E N T</u> |
| v. | ) |
| | ) [18 U.S.C. § 1343: Wire Fraud; |
| JAMES DAVIS BENNETT, | ) 18 U.S.C. § 1344: Bank Fraud; |
| | ) 18 U.S.C. § 225: Continuing |
| Defendant. | ) Financial Crimes Enterprise; 18 |
| | ) U.S.C. § 2(b): Aiding and |
| | ) Abetting] |
| | ) |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1343 and 2(b)]

INTRODUCTION

At all times relevant to this indictment:

1.  Defendant JAMES DAVIS BENNETT ("BENNETT") was the owner of West Belle Realty, a company in the business of representing buyers and sellers in real estate transactions, West Belle Mortgage, a company in the business of originating mortgage loans

//

//

BAS:bas

for real estate transactions, and West Belle Mortgage Escrow, a company in the business of providing escrow services for real estate transactions (collectively "West Belle").

    2.   Steven Brian Rogers ("Rogers") was a realtor and loan agent at West Belle.

    3.   Donna M. Simon ("Simon") was a loan agent at Long Beach City Mortgage, a company in the business of originating mortgage loans for real estate transactions.

    4.   Benny Ibarra ("Ibarra") and Ricardo Omar Garcia ("Garcia") were employees of West Belle.

THE FRAUDULENT SCHEME

    5.   Beginning on a date unknown and continuing through in or about January 2002, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia and others knowingly devised, participated in, and executed a scheme to defraud mortgage lenders and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

    6.   In carrying out this scheme, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia and others engaged in and caused others to engage in the following fraudulent and deceptive acts, practices and devices, among others:

        a.   Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers would identify residential real estate (the "properties") for sale.

//

2

  b. Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers would recruit relatives and associates (the "intermediaries") to enter into escrows to purchase the properties at or near fair market value.

  c. Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers would recruit other relatives and associates (the "straw buyers") to enter into other escrows to purchase the properties from the intermediaries at inflated prices.

  d. To obtain mortgage loans for the straw buyers, Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and caused others to prepare fraudulent loan packages concealing the double escrows and falsely representing that the straw buyers were purchasing the properties directly from the original sellers at the inflated prices and that the straw buyers were creditworthy. To support these fraudulent loan packages, Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and caused others to prepare false and fabricated documentation, including false settlement statements, grant deeds, title reports, down payment checks, pay stubs, W-2 statements, and bank statements.

  e. Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers submitted and caused others to submit these fraudulent loan packages to mortgage lenders in Orange and Los Angeles Counties.

 7. Based on the fraudulent acts, practices and devices, the mortgage lenders funded the loans. At the close of escrow, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia and other co-

schemers received fees, commissions and profits.

8. Within months of the resale of the residential properties, the straw buyers typically defaulted on the loan payments, leaving mortgage lenders with losses in excess of $1,000,000.

THE WIRINGS

9. On or about the dates set forth below, in the Central District of California and elsewhere, for the purpose of executing the above-described scheme to defraud and attempting to do so, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia, and others caused to be transmitted in interstate commerce by wire communications the following wire transfers from mortgage lenders' accounts outside California to title insurance company and escrow accounts in California.

| Count | Date | Funds Wired |
|---|---|---|
| One | 7/27/99 | The CIT Group's $270,000 mortgage loan for the purchase of 2612 Griffith Avenue, Los Angeles, California |
| Two | 10/14/99 | Mortgage Portfolio Services' $233,750 mortgage loan for the purchase of 760 East 43rd Place, Los Angeles, California |
| Three | 3/1/00 | Greenpoint Mortgage Funding, Inc.'s $225,250 mortgage loan for the purchase of 615 West Imperial Highway, Los Angeles, California |
| Four | 2/27/01 | Laguna Capital Mortgage Corporation's $248,000 mortgage loan for the purchase of 860 Cerritos Avenue, Long Beach, California |

4

COUNTS FIVE THROUGH TEN

[18 U.S.C. §§ 1344 and 2(b)]

10. The Grand Jury hereby incorporates by reference and realleges each and every allegation of paragraphs one through eight of this indictment.

11. Flagstar Bank and Equicredit Corporation were financial institutions and wholly owned subsidiaries of financial institutions the deposits of which were insured by the Federal Deposit Insurance Corporation.

12. On or about the dates set forth below, within the Central District of California, Defendant BENNETT, Rogers, Simon, Garcia, and others, for the purpose of executing the above-described scheme to defraud the following financial institutions and to obtain monies and funds owned by and in the custody and control of these financial institutions by means of materially false and fraudulent pretenses, representations and promises, caused these financial institutions to disburse loan proceeds in the amounts listed below for the purchase of the properties listed below:

| Count | Date | Financial Institution, Loan Amount, Property |
|---|---|---|
| Five | 8/6/99 | Flagstar Bank's $256,000 mortgage loan for the purchase of 245 West 56th Street, Los Angeles, California |
| Six | 8/16/99 | Flagstar Bank's $252,000 mortgage loan for the purchase of 1412 West 94th Place, Los Angeles, California |

5

| | | |
|---|---|---|
| Seven | 9/17/99 | Flagstar Bank's $247,500 mortgage loan for the purchase of 768 East 43rd Place, Los Angeles, California |
| Eight | 11/22/00 | Equicredit Corporation's $200,000 mortgage loan for the purchase of 1495 Alamitos Avenue, Long Beach, California |
| Nine | 11/28/00 | Equicredit Corporation's $232,000 mortgage loan for the purchase of 1105 Ohio Avenue, Long Beach, California |
| Ten | 3/2/01 | Equicredit Corporation's $248,000 mortgage loan for the purchase of 1304-1306 Junipero Avenue, Long Beach, California |

///

COUNT TWELVE

[18 U.S.C. § 225]

13. The Grand Jury hereby incorporates by reference and realleges each and every allegation of paragraphs one through twelve of this indictment.

14. Beginning on a date unknown and continuing through in or about January 2002, in Los Angeles and Orange Counties, within the Central District of California, Defendant BENNETT knowingly conducted a continuing financial crimes enterprise, in that Defendant BENNETT committed a series of violations under Title 18, United States Code, Sections 1341, 1343, and 1344, which violations were undertaken by Defendant BENNETT, in concert with at least three other persons whom Defendant BENNETT organized, managed, and supervised, and from which continuing series of violations Defendant BENNETT received in excess of $5,000,000 in gross receipts from on or about April 2, 1999, and ending on or about March 2, 2001.

A TRUE BILL

_____
Foreperson

DEBRA W. YANG
United States Attorney


THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division


KENNETH B. JULIAN
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

7

COURT'S INSTRUCTION NO. 1

Members of the jury, now that you have heard all the evidence and arguments of counsel, it is my duty to instruct you on the law which applies to this case.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return -- that is a matter entirely up to you.

COURT'S INSTRUCTION NO. 2

The indictment is not evidence. The defendant has pleaded not guilty to the charges contained in the indictment. The defendant is presumed to be innocent and does not have to testify or present any evidence to prove his innocence. The government has the burden of proving every element of the charges beyond a reasonable doubt.

COURT'S INSTRUCTION NO. 5

Defendant Bennett has been charged in Counts One through Four with wire fraud, in violation of Section 1343 of Title 18 of the United States Code, or aiding and abetting in the commission of this crime, which I will discuss in a moment.

In order for defendant Bennett to be found guilty of wire fraud, the government must prove each of the following elements beyond a reasonable doubt:

First, defendant Bennett made up or participated in a scheme or plan for obtaining money or property by making false promises or statements, with all of you agreeing on at least one particular false promise or statement that was made;

Second, defendant Bennett knew that the promises or statements were false;

Third, the promises or statements were material, that is, they would reasonably influence a person to part with money or property;

Fourth, defendant Bennett acted with the intent to defraud; and

Fifth, defendant Bennett used, or caused to be used, a wire, radio, or television communication in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

A wiring is caused when one knows that a wire, radio, or television communication in interstate or foreign commerce will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the

6

1 | material sent via wire, radio, or television communication in
2 | interstate or foreign commerce was itself false or deceptive so
3 | long as the wire, radio, or television communication in
4 | interstate or foreign commerce was used as a part of the scheme,
5 | nor does it matter whether the scheme or plan was successful or
6 | that any money or property was obtained.

COURT'S INSTRUCTION NO. 7

Defendant Bennett has been charged in Counts Five through Ten with bank fraud, in violation of Section 1344 of Title 18 of the United States Code, or aiding and abetting in the commission of this crime, which I will discuss in a moment.

In order to establish bank fraud, the government must prove the existence of either: (1) a scheme to defraud; or, alternatively, (2) a scheme for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. Although the government can prove both types of schemes, it only needs to prove the existence of one type of scheme.

It is not necessary for the government to prove that the scheme succeeded, that anyone was actually deceived or defrauded by the scheme, that any money was actually obtained, or that anyone actually lost money as a result of the scheme; however, you may consider evidence of loss in determining whether the scheme existed.

COURT'S INSTRUCTION NO. 24

A person may be found guilty of wire fraud or bank fraud even if the defendant did not personally commit the act or acts constituting the crime but aided and abetted in its commission.

To prove defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt:

First, wire fraud or bank fraud was committed by someone;

Second, defendant knowingly and intentionally aided, counseled, commanded, induced, or procured that person to commit wire fraud or bank fraud; and

Third, defendant acted before the crime was completed.

It is not enough that defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.

The evidence must show beyond a reasonable doubt that defendant acted with the knowledge and intention of helping that person commit wire fraud or bank fraud.

The government is not required to prove whether defendant actually committed the crime or aided and abetted in its commission.

COURT'S INSTRUCTION NO. 26

Defendant has been charged in Count Twelve with a continuing financial crimes enterprise, in violation of Section 225 of Title 18 of the United States Code.

In order for defendant to be found guilty of that crime, the government must prove each of the following elements beyond a reasonable doubt, with all of you agreeing unanimously to each element:

First, defendant organized, managed, or supervised a continuing financial crimes enterprise;

Second, defendant received $5,000,000 or more in gross receipts from the continuing financial crimes enterprise in a twenty-four-month period; and

Third, defendant acted in concert with at least three other persons in executing the crimes.

"In concert" means a mutual agreement in a common plan or enterprise.

The phrase "continuing financial crimes enterprise" means a series of three (3) or more violations of the bank fraud statute, wire fraud statute, or mail fraud statute, the latter two violations affecting financial institutions, which are in some way related to one another, with all of you agreeing unanimously on which three or more violations the defendant committed.

Any testimony or evidence pertaining to the 1052 North Loma Vista Dr. property transaction in 2002 cannot be considered in connection with Count Twelve.