# EXHIBIT A-INDICTMENT

18 U.S.C.A. § 2

UNITED STATES CODE ANNOTATED
TITLE 18. CRIMES AND CRIMINAL PROCEDURE
PART I--CRIMES
CHAPTER 1--GENERAL PROVISIONS

Current through Pub.L. 109-169, 109-173 approved February 15, 2006

§ 2. Principals

  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

CREDIT(S)



FILED - SOUTHERN DIVISION
CLERK, U.S DISTRICT COURT

OCT - 7 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2003 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. SA CR 03-25(A)-AHS |
| Plaintiff, | ) |
| | ) F I R S T |
| v. | ) S U P E R S E D I N G |
| | ) I N D I C T M E N T |
| JAMES DAVIS BENNETT, | ) [18 U.S.C. § 1343: Wire Fraud; |
| Defendant. | )- 18 U.S.C. § 1344: Bank Fraud; |
| | )- 18 U.S.C. § 225: Continuing |
| | ) Financial Crimes Enterprise; 18 |
| | ) U.S.C. § 2(b): Aiding and |
| | ) Abetting] |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1343 and 2(b)]

INTRODUCTION

At all times relevant to this indictment:

1.    Defendant JAMES DAVIS BENNETT ("BENNETT") was the owner of West Belle Realty, a company in the business of representing buyers and sellers in real estate transactions, West Belle Mortgage, a company in the business of originating mortgage loans

//

//

BAS:bas BAS

1  for real estate transactions, and West Belle Mortgage Escrow, a
2  company in the business of providing escrow services for real
3  estate transactions (collectively "West Belle").

4      2.    Steven Brian Rogers ("Rogers") was a realtor and loan
5  agent at West Belle.

6      3.    Donna M. Simon ("Simon") was a loan agent at Long Beach
7  City Mortgage, a company in the business of originating mortgage
8  loans for real estate transactions.

9      4.    Benny Ibarra ("Ibarra") and Ricardo Omar Garcia
10 ("Garcia") were employees of West Belle.

11 THE FRAUDULENT SCHEME

12     5.    Beginning on a date unknown and continuing through in
13 or about January 2002, in Los Angeles and Orange Counties, within
14 the Central District of California, and elsewhere, Defendant
15 BENNETT, Rogers, Simon, Ibarra, Garcia and others knowingly
16 devised, participated in, and executed a scheme to defraud
17 mortgage lenders and to obtain money and property by means of
18 materially false and fraudulent pretenses, representations and
19 promises.

20     6.    In carrying out this scheme, Defendant BENNETT, Rogers,
21 Simon, Ibarra, Garcia and others engaged in and caused others to
22 engage in the following fraudulent and deceptive acts, practices
23 and devices, among others:

24          a.    Defendant BENNETT, Rogers, Simon, Ibarra, and
25 other co-schemers would identify residential real estate (the
26 "properties") for sale.

27 //

28
                                2

1    b.    Defendant BENNETT, Rogers, Simon, Ibarra, and
2 other co-schemers would recruit relatives and associates (the
3 "intermediaries") to enter into escrows to purchase the
4 properties at or near fair market value.
5    c.    Defendant BENNETT, Rogers, Simon, Ibarra, and
6 other co-schemers would recruit other relatives and associates
7 (the "straw buyers") to enter into other escrows to purchase the
8 properties from the intermediaries at inflated prices.
9    d.    To obtain mortgage loans for the straw buyers,
10 Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and
11 caused others to prepare fraudulent loan packages concealing the
12 double escrows and falsely representing that the straw buyers
13 were purchasing the properties directly from the original sellers
14 at the inflated prices and that the straw buyers were
15 creditworthy.  To support these fraudulent loan packages,
16 Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and
17 caused others to prepare false and fabricated documentation,
18 including false settlement statements, grant deeds, title
19 reports, down payment checks, pay stubs, W-2 statements, and bank
20 statements.
21    e.    Defendant BENNETT, Rogers, Simon, Ibarra, and
22 other co-schemers submitted and caused others to submit these
23 fraudulent loan packages to mortgage lenders in Orange and Los
24 Angeles Counties.
25    7.    Based on the fraudulent acts, practices and devices,
26 the mortgage lenders funded the loans.  At the close of escrow,
27 Defendant BENNETT, Rogers, Simon, Ibarra, Garcia and other co-
28

1   schemers received fees, commissions and profits.

2       8.   Within months of the resale of the residential

3   properties, the straw buyers typically defaulted on the loan

4   payments, leaving mortgage lenders with losses in excess of

5   $1,000,000.

6   THE WIRINGS

7       9.   On or about the dates set forth below, in the Central

8   District of California and elsewhere, for the purpose of

9   executing the above-described scheme to defraud and attempting to

10  do so, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia, and

11  others caused to be transmitted in interstate commerce by wire

12  communications the following wire transfers from mortgage

13  lenders' accounts outside California to title insurance company

14  and escrow accounts in California.

| Count | Date | Funds Wired |
|---|---|---|
| One | 7/27/99 | The CIT Group's $270,000 mortgage loan for the purchase of 2612 Griffith Avenue, Los Angeles, California |
| Two | 10/14/99 | Mortgage Portfolio Services' $233,750 mortgage loan for the purchase of 760 East 43rd Place, Los Angeles, California |
| Three | 3/1/00 | Greenpoint Mortgage Funding, Inc.'s $225,250 mortgage loan for the purchase of 615 West Imperial Highway, Los Angeles, California |
| Four | 2/27/01 | Laguna Capital Mortgage Corporation's $248,000 mortgage loan for the purchase of 860 Cerritos Avenue, Long Beach, California |

4

1          COUNTS FIVE THROUGH ELEVEN

2          [18 U.S.C. §§ 1344 and 2(b)]

3      10.    The Grand Jury hereby incorporates by reference and

4  realleges each and every allegation of paragraphs one through

5  eight of this indictment.

6      11.    Flagstar Bank, Equicredit Corporation, and First Union

7  Mortgage Corporation were financial institutions and wholly owned

8  subsidiaries of financial institutions the deposits of which were

9  insured by the Federal Deposit Insurance Corporation.

10      12.    On or about the dates set forth below, within the

11  Central District of California, Defendant BENNETT, Rogers, Simon,

12  Garcia, and others, for the purpose of executing the above-

13  described scheme to defraud the following financial institutions

14  and to obtain monies and funds owned by and in the custody and

15  control of these financial institutions by means of materially

16  false and fraudulent pretenses, representations and promises,

17  caused these financial institutions to disburse loan proceeds in

18  the amounts listed below for the purchase of the properties

19  listed below:

| Count | Date | Financial Institution, Loan Amount, Property |
|---|---|---|
| Five | 8/6/99 | Flagstar Bank's $256,000 mortgage loan for the purchase of 245 West 56th Street, Los Angeles, California |
| Six | 8/16/99 | Flagstar Bank's $252,000 mortgage loan for the purchase of 1412 West 94th Place, Los Angeles, California |

27

28

5

| | | |
|---|---|---|
| 1  Seven | 9/17/99 | Flagstar Bank's $247,500 mortgage loan for |
| 2  | | the purchase of 768 East 43rd Place, Los |
| 3  | | Angeles, California |
| 4  Eight | 11/22/00 | Equicredit Corporation's $200,000 mortgage |
| 5  | | loan for the purchase of 1495 Alamitos |
| 6  | | Avenue, Long Beach, California |
| 7  Nine | 11/28/00 | Equicredit Corporation's $232,000 mortgage |
| 8  | | loan for the purchase of 1105 Ohio Avenue, |
| 9  | | Long Beach, California |
| 10  Ten | 3/2/01 | Equicredit Corporation's $248,000 mortgage |
| 11  | | loan for the purchase of 1304-1306 Junipero |
| 12  | | Avenue, Long Beach, California |
| 13  Eleven | 1/8/02 | First Union Mortgage Corporation's $227,500 |
| 14  | | mortgage loan for the purchase of 1052 North |
| 15  | | Loma Vista Drive, Long Beach, California |

16
17
18
19
20
21
22
23
24
25
26
27
28

6

COUNT TWELVE

[18 U.S.C. § 225]

13.    The Grand Jury hereby incorporates by reference and realleges each and every allegation of paragraphs one through eight of this indictment.

14.    Beginning on a date unknown and continuing through in or about January 2002, in Los Angeles and Orange Counties, within the Central District of California, Defendant BENNETT knowingly conducted a continuing financial crimes enterprise, in that Defendant BENNETT committed a series of violations under Title 18, United States Code, Sections 1343 and 1344 as alleged in Counts One through Eleven of this indictment, which are incorporated by reference, which violations were undertaken by Defendant BENNETT, in concert with at least three other persons whom Defendant BENNETT organized, managed, and supervised, and from which continuing series of violations Defendant BENNETT received approximately $6,202,450 in gross receipts from on or about April 2, 1999, and ending on or about March 2, 2001.

ADDITIONAL ALLEGATIONS

The Grand Jury further alleges, in Counts One through Twelve:

15.    Defendant BENNETT was an organizer and leader and a manager and supervisor of a criminal activity that involved five or more participants and was otherwise extensive.

16.    Defendant BENNETT, to execute the above-described fraudulent schemes, used more than minimal planning.

7

1    17.   Defendant BENNETT derived more than $1,000,000 in gross
2    receipts from one or more financial institutions as a result of
3    the above-described fraudulent schemes.

4    18.   As a result of the acts and omissions committed, aided,
5    abetted, counseled, commanded, induced, procured, or willfully
6    caused by Defendant BENNETT, and reasonably foreseeable acts and
7    omissions of others in furtherance of their jointly undertaken
8    criminal activity with Defendant BENNETT, in these schemes and
9    acts and omissions that were part of the same course of conduct
10   and common scheme and plan as these schemes, loss in excess of
11   $1,000,000 was incurred.

12   19.   Defendant BENNETT, in executing the above-described
13   fraudulent schemes, abused a position of trust and used a special
14   skill in a manner that significantly facilitated the commission
15   or concealment of the above-described fraudulent schemes.

16

17                           A TRUE BILL

18

19                           _____
                             Foreperson

20   DEBRA W. YANG
     United States Attorney
21

22   STEVEN D. CLYMER
     Special Assistant United States Attorney
23   Chief, Criminal Division

24

25   LAWRENCE E. KOLE
     Assistant United States Attorney
26   Acting Chief, Southern Division

27

28
                              8



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
                                    FILED
                         CLERK, U.S. DISTRICT COURT

                              SEP - 7 2005

                         CENTRAL DISTRICT OF CALIFORNIA
                         BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2004 Grand Jury

UNITED STATES OF AMERICA,    )  No. SA CR 03-25(B)-AHS
                             )
        Plaintiff,           )  S E C O N D
                             )  S U P E R S E D I N G
        v.                   )  I N D I C T M E N T
                             )
JAMES DAVIS BENNETT,         )  [18 U.S.C. § 1343: Wire Fraud;
                             )  18 U.S.C. § 1344: Bank Fraud;
        Defendant.           )  18 U.S.C. § 225: Continuing
                             )  Financial Crimes Enterprise; 18
                             )  U.S.C. § 2(b): Aiding and
                             )  Abetting]

    The Grand Jury charges:

                   COUNTS ONE THROUGH FOUR

                   [18 U.S.C. §§ 1343 and 2(b)]

INTRODUCTION

    At all times relevant to this indictment:

    1.   Defendant JAMES DAVIS BENNETT ("BENNETT") was the owner

of West Belle Realty, a company in the business of representing

buyers and sellers in real estate transactions, West Belle

Mortgage, a company in the business of originating mortgage loans

//

//

BAS:bas

BAS

1  for real estate transactions, and West Belle Mortgage Escrow, a

2  company in the business of providing escrow services for real

3  estate transactions (collectively "West Belle").

4      2.    Steven Brian Rogers ("Rogers") was a realtor and loan

5  agent at West Belle.

6      3.    Donna M. Simon ("Simon") was a loan agent at Long Beach

7  City Mortgage, a company in the business of originating mortgage

8  loans for real estate transactions.

9      4.    Benny Ibarra ("Ibarra") and Ricardo Omar Garcia

10 ("Garcia") were employees of West Belle.

11 THE FRAUDULENT SCHEME

12     5.    Beginning on a date unknown and continuing through in

13 or about January 2002, in Los Angeles and Orange Counties, within

14 the Central District of California, and elsewhere, Defendant

15 BENNETT, Rogers, Simon, Ibarra, Garcia and others knowingly

16 devised, participated in, and executed a scheme to defraud

17 mortgage lenders and to obtain money and property by means of

18 materially false and fraudulent pretenses, representations and

19 promises.

20     6.    In carrying out this scheme, Defendant BENNETT, Rogers,

21 Simon, Ibarra, Garcia and others engaged in and caused others to

22 engage in the following fraudulent and deceptive acts, practices

23 and devices, among others:

24         a.    Defendant BENNETT, Rogers, Simon, Ibarra, and

25 other co-schemers would identify residential real estate (the

26 "properties") for sale.

27 //

28                                  2

b.    Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers would recruit relatives and associates (the "intermediaries") to enter into escrows to purchase the properties at or near fair market value.

c.    Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers would recruit other relatives and associates (the "straw buyers") to enter into other escrows to purchase the properties from the intermediaries at inflated prices.

d.    To obtain mortgage loans for the straw buyers, Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and caused others to prepare fraudulent loan packages concealing the double escrows and falsely representing that the straw buyers were purchasing the properties directly from the original sellers at the inflated prices and that the straw buyers were creditworthy.  To support these fraudulent loan packages, Defendant BENNETT, Rogers, Simon, Ibarra, and Garcia prepared and caused others to prepare false and fabricated documentation, including false settlement statements, grant deeds, title reports, down payment checks, pay stubs, W-2 statements, and bank statements.

e.    Defendant BENNETT, Rogers, Simon, Ibarra, and other co-schemers submitted and caused others to submit these fraudulent loan packages to mortgage lenders in Orange and Los Angeles Counties.

7.    Based on the fraudulent acts, practices and devices, the mortgage lenders funded the loans.  At the close of escrow, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia and other co-

3

1 | schemers received fees, commissions and profits.

2 |   8.   Within months of the resale of the residential

3 | properties, the straw buyers typically defaulted on the loan

4 | payments, leaving mortgage lenders with losses in excess of

5 | $1,000,000.

6 | THE WIRINGS

7 |   9.   On or about the dates set forth below, in the Central

8 | District of California and elsewhere, for the purpose of

9 | executing the above-described scheme to defraud and attempting to

10 | do so, Defendant BENNETT, Rogers, Simon, Ibarra, Garcia, and

11 | others caused to be transmitted in interstate commerce by wire

12 | communications the following wire transfers from mortgage

13 | lenders' accounts outside California to title insurance company

14 | and escrow accounts in California.

| Count | Date | Funds Wired |
|-------|------|-------------|
| One | 7/27/99 | The CIT Group's $270,000 mortgage loan for the purchase of 2612 Griffith Avenue, Los Angeles, California |
| Two | 10/14/99 | Mortgage Portfolio Services' $233,750 mortgage loan for the purchase of 760 East 43rd Place, Los Angeles, California |
| Three | 3/1/00 | Greenpoint Mortgage Funding, Inc.'s $225,250 mortgage loan for the purchase of 615 West Imperial Highway, Los Angeles, California |
| Four | 2/27/01 | Laguna Capital Mortgage Corporation's $248,000 mortgage loan for the purchase of 860 Cerritos Avenue, Long Beach, California |

4

COUNTS FIVE THROUGH ELEVEN

[18 U.S.C. §§ 1344 and 2(b)]

10.  The Grand Jury hereby incorporates by reference and reinalleges each and every allegation of paragraphs one through eight of this indictment.

11.  Flagstar Bank, Equicredit Corporation, and First Union Mortgage Corporation were financial institutions and wholly owned subsidiaries of financial institutions the deposits of which were insured by the Federal Deposit Insurance Corporation.

12.  On or about the dates set forth below, within the Central District of California, Defendant BENNETT, Rogers, Simon, Garcia, and others, for the purpose of executing the above-described scheme to defraud the following financial institutions and to obtain monies and funds owned by and in the custody and control of these financial institutions by means of materially false and fraudulent pretenses, representations and promises, caused these financial institutions to disburse loan proceeds in the amounts listed below for the purchase of the properties listed below:

| Count | Date | Financial Institution, Loan Amount, Property |
|-------|------|----------------------------------------------|
| Five | 8/6/99 | Flagstar Bank's $256,000 mortgage loan for the purchase of 245 West 56th Street, Los Angeles, California |
| Six | 8/16/99 | Flagstar Bank's $252,000 mortgage loan for the purchase of 1412 West 94th Place, Los Angeles, California |

5

| | | |
|---|---|---|
| Seven | 9/17/99 | Flagstar Bank's $247,500 mortgage loan for the purchase of 768 East 43rd Place, Los Angeles, California |
| Eight | 11/22/00 | Equicredit Corporation's $200,000 mortgage loan for the purchase of 1495 Alamitos Avenue, Long Beach, California |
| Nine | 11/28/00 | Equicredit Corporation's $232,000 mortgage loan for the purchase of 1105 Ohio Avenue, Long Beach, California |
| Ten | 3/2/01 | Equicredit Corporation's $248,000 mortgage loan for the purchase of 1304-1306 Junipero Avenue, Long Beach, California |
| Eleven | 1/8/02 | First Union Mortgage Corporation's $227,500 mortgage loan for the purchase of 1052 North Loma Vista Drive, Long Beach, California |

6

COUNT TWELVE

[18 U.S.C. § 225]

13.  The Grand Jury hereby incorporates by reference and realleges each and every allegation of paragraphs one through twelve of this indictment.

14.  Beginning on a date unknown and continuing through in or about January 2002, in Los Angeles and Orange Counties, within the Central District of California, Defendant BENNETT knowingly conducted a continuing financial crimes enterprise, in that Defendant BENNETT committed a series of violations under Title 18, United States Code, Sections 1341, 1343, and 1344, which violations were undertaken by Defendant BENNETT, in concert with at least three other persons whom Defendant BENNETT organized, managed, and supervised, and from which continuing series of violations Defendant BENNETT received in excess of $5,000,000 in gross receipts from on or about April 2, 1999, and ending on or about March 2, 2001.

A TRUE BILL

_____
Foreperson

DEBRA W. YANG
United States Attorney


THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division


KENNETH B. JULIAN
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

7